IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| GEORGE ALVAREZ<br>*Plaintiff* | §<br>§<br>§ | |
| VS. | §<br>§ | CIVIL ACTION NO. B-11-CV-078<br>JURY REQUESTED |
| THE CITY OF BROWNSVILLE<br>*Defendant* | §<br>§<br>§ | |

**DEFENDANT CITY OF BROWNSVILLE'S
MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW, The City of Brownsville (the City), Defendant in the above-styled and numbered cause, and files this its Motion for Summary Judgment, pursuant to the Court's Order of December 30, 2013 (Dkt. No. 80), and in support thereof, would respectfully show unto the Court as follows:

### I.
### STATEMENT OF THE CASE

After the Final Pretrial Conference on December 10, 2013, the Court issued an order (Dkt. No. 80) allowing the parties to submit motions for summary judgment on the following unresolved issues in this case : 1) whether a Brownsville Police Department (BPD) policy of nondisclosure of internal affairs material exists, 2) whether the BPD's failure to provide a copy of the video constituted a *Brady* violation, and 3) whether the BPD policy was the moving force that caused the *Brady* violation.

### II.
### STATEMENT OF FACTS & EXHIBITS

Defendant hereby incorporates the Statement of Facts & Exhibits set forth in its First Motion for Summary Judgment (Dkt. No. 25); Reply to Plaintiff's Response (Dkt. Nos. 33 & 34); and Defendants' Additional Briefing in Support of Defendants' First Motion for

Summary Judgment (Dkt. No. 39). In addition, Defendant submits the exhibits below:

1. Affidavit of BPD Commander Juan A. Hernandez with attached documents from BPD Criminal Investigations Division (CID)

2. Excerpts from Deposition Transcript of Former Chief Carlos Garcia

3. Affidavit of Rebecca RuBane, former Cameron County Assistant District Attorney

### III.
### SUMMARY OF FACTS[1]

Plaintiff's allegations all stem from the arrest of Plaintiff on November 27, 2005 by BPD for the offense of burglary of a motor vehicle. (See Deposition Transcript of George Alvarez dated June 13, 2012, p. 18-20 in Exhibit "A"). While being held at the City jail, the Plaintiff was banging the telephone on the phone receiver mounted to the wall of the jail cell and made lewd gestures (shot the finger) to the security camera located in the cell. (See Deposition Transcript of George Alvarez dated June 13, 2012, p. 20-21; 46-47 and video recording marked as exhibit "2" attached to Deposition Transcript of George Alvarez dated June 13, 2012 in Exhibit "A"). The jailers viewed Plaintiff's behavior from the monitors located inside the jail office. To prevent any damage to the telephone located in the jail cell and to stop the disturbance the Plaintiff was creating inside the cell, the detention officers made the decision to extract the Plaintiff from cell # 101 and move him to the padded cell. (See Deposition Transcript of Jesus Arias dated March 5, 2009, p. 43 in Exhibit "B"). The detention officers gave the Plaintiff numerous verbal commands instructing the Plaintiff to voluntarily walk to the padded cell. (See Deposition Transcript of George Alvarez dated June 13, 2012, p. 22; 49-51 and video recording marked as exhibit "2" attached to Deposition

---

[1] In its Summary of Facts, Defendant will be citing to the exhibits previously attached to its original Motion for Summary Judgment, Dkt. No. 25.

Transcript of George Alvarez dated June 13, 2012 in Exhibit "A"). The Plaintiff refused to voluntarily walk to the padded cell and had to be physically escorted to the padded cell. *Id* at 51-53. The Plaintiff resisted being transferred to another cell in the jail and as a result, a physical altercation ensued between the Plaintiff and Defendant Jailer Jesus Arias. (See Deposition Transcript of George Alvarez dated June 13, 2012, p. 51-53; video recordings marked as exhibits "2" and "3" and photographs marked as exhibits "4," "5," "6," and "7" attached to Deposition Transcript of George Alvarez dated June 13, 2012 all attached to Exhibit "A"; Deposition Transcript of Jesus Arias dated December 5, 2011, p. 53-74; 80, lines 7-20 in Exhibit "C"). During this physical altercation, the Plaintiff intentionally grabbed the neck area, chest area, and the testicular area of Detention Officer Jesus Arias. *Id*. As a result of the Plaintiff's resistance and physical assault of Defendant Arias, the Plaintiff was charged with assault of a public servant in addition to the underlying offense of burglary of a vehicle. (See p. 34 of Deposition Transcript of George Alvarez dated June 13, 2012 in Exhibit "A").

Plaintiff plead guilty to the offense of assault on a public servant and was sentenced to 10 years probation, including the successful completion of six (6) months at a Texas Department of Criminal Justice (TDCJ) Substance Abuse Felony Punishment Facility (SAFPF) program .[2] *Id*. at p. 35. Plaintiff refused to complete the SAFPF program and voluntarily chose to not complete the program, which caused his probated sentence to be revoked. *Id*. at p. 35-46; *see also,* exhibit "1" attached to Deposition Transcript of George Alvarez dated June 13, 2012 attached in Exhibit "A." As a result of Plaintiff's refusal to comply with his probation terms, Plaintiff's probation was revoked and he was sentenced to

---

[2]Plaintiff also plead guilty to the underlying offense of burglary of a vehicle. See, *State of Texas v. George Alvarez*; Cause No. 05-CCR-6115-A; In the County Court at Law No. 1, Cameron County, Texas.

8 years at a TDCJ prison facility. *Id*. Plaintiff was then subsequently released after serving approximately 4 years in prison as a result of the Court of Criminal Appeals overturning his conviction. Plaintiff now brings this civil suit alleging he was wrongfully imprisoned due to the BPD's alleged policy of nondisclosure of exculpatory evidence.

## IV.
## ARGUMENT & AUTHORITIES

**A.     Legal Standard**

Federal Rule of Civil Procedure 56(c) provides that a summary judgment shall be rendered if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). By its very terms, the rule permits summary judgment even if the parties disagree as to some facts. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). Summary judgment is precluded under Rule 56(c) only when the facts in dispute might affect the outcome of the suit under governing law and the dispute is genuine. *Id.* at 248. Should it appear that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law, the district court should grant summary judgment. *Speaks v. Trikora Lloyd P.T.*, 838 F.2d 1436, 1438-39 (5th Cir. 1988).

The movant need not disprove the non-moving party's claims in order to secure a summary judgment. Summary judgment is proper whenever the movant demonstrates "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *accord Slaughter v. Allstate Ins. Co.*, 803 F.2d 857, 860 (5th Cir. 1986). Thus, the defendant is entitled to summary judgment when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to the plaintiff's case, and on which [the plaintiff], will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (the

burden is not on the moving party to produce evidence showing the absence of genuine issue of material fact). *See also Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991); *International Ass'n of Machinists and Aerospace Workers No. 2504 v. International Mfg. Co.*, 812 F.2d 219, 222 (5th Cir. 1987) ("[M]ere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment"); *Anderson*, 477 U.S. at 249-50 (holding that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party . . . If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.").

### B. Plaintiff's Municipal Liability Claim

Plaintiff's sole remaining claim is a municipal liability claim pursuant to 42 U.S.C. § 1983. A governmental entity may be liable under 42 U.S.C. § 1983 if the execution of one of its customs or policies deprives a plaintiff of his constitutional rights. *Monell v. Dep't of Social Serv.*, 436 U.S. 658, 691 (1978). To state a cause of action against a municipal defendant under 42 U.S.C. § 1983, the plaintiff must allege (1) a policymaker; (2) an official policy or custom; and (3) a violation of the plaintiff's constitutional rights whose "moving force" is the policy or custom. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 166 (5th Cir. 2010) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)); *see also Doe v. Ennis Indep. Sch. Dist.*, No. 3:05-CV-1999-R(BH), slip op. at 2 (N.D. Tex. Jan. 31, 2007) (citing *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003)).

### C. BPD Policy

In *Zarnow,* the Fifth Circuit was clear on how a court is to analyze whether there is municipal liability, and specifically outlined the steps to determine whether there is a policy. *Zarnow,* 614 F.3d at 166 (5th Cir. 2010). There are two forms that an "official policy" may

take. *Zarnow*, 614 F.3d at 168-169. First, a plaintiff may identify a policy statement formally announced by an official policymaker. *Id*. Alternatively, the plaintiff may show "a persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Zarnow*, 614 F.3d at 169 (quoting *Webster v. City of Houston*, 735 F.3d 838, 841 (5th Cir. 1984) (en banc)). In this case, there is no formal policy. Thus, we look to the second form of establishing a policy.

A plaintiff may prove the existence of a "custom or policy" in one of two ways. *Zarnow*, 614 F.3d at 169. First, a pattern of unconstitutional conduct may be shown on the part of municipal actors or employees. *Id*. A plaintiff must demonstrate a pattern of conduct by municipal actors, not policymakers. *Id*. In this case, this Court has already determined that the Plaintiff has failed to establish a pattern of unconstitutional conduct. *See* Magistrate Judge's Report & Recommendation, Dkt. No. 42. The Magistrate stated that alternatively, "it may be shown that a *final policymaker* took a single unconstitutional action." *Id*.

"Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1985). There has been no allegation and no evidence produced that shows that Former Chief of Police Carlos Garcia, who has already been found to be a final policymaker in this case (Dkt. No. 42, p. 23), took any action or made any decision regarding the practice of BPD Internal Affairs Division (IAD) to maintain its records confidential. Furthermore, the plaintiff must demonstrate that a municipal decision promulgated by a final policymaker reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision. *Bd. of the County Comm'rs v. Brown,* 520 U.S. 397, 411 (1997). There has been no evidence produced that any

action taken by Chief Garcia was done so with deliberate indifference.

### A.  *Deliberate Indifference*

A plaintiff must demonstrate "[a]ctual or constructive knowledge of such custom ... attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority." *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003) (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984)). Establishing the requisite official knowledge requires that a plaintiff establish that an official policy was "promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Burge*, 336 F.3d at 370 (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)). Proof of deliberate indifference generally requires that a plaintiff demonstrate "at least a pattern of similar violations" arising from the custom or practice that is so clearly inadequate as to be "obviously likely to result in a constitutional violation." *Burge*, 336 F.3d at 370 (quoting *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001)). Deliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it "must amount to an intentional choice, not merely an unintentionally negligent oversight." *James v. Harris County*, 577 F.3d 612, 617-618 (5th Cir. 2009) (quoting *Rhyne v. Henderson County*, 973 F.2d 383, 392 (5th Cir. 1992)).

In a limited set of cases where a plaintiff is unable to show a pattern of constitutional violations, such as the case at bar, a plaintiff may also establish deliberate indifference by "showing a single incident with proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights." *Burge*, 336 F.3d at 373 (5th Cir. 2003) (quoting *McClendon v. City of Columbia*, 258 F.3d 432, 442 (5th Cir. 2001)). The exception will apply only where the facts giving rise to the violation are such that it should

have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy, practice or custom. *Id.*; *Brown v. Bryan County*, 219 F.3d 450, 461 (5th Cir. 2000), pet. for reh'g en banc denied, 219 F.3d 944 (5th Cir. 2000). However, the Fifth Circuit has held that "[t]he single incident exception . . . is a narrow one, and one that we have been reluctant to expand." *Id.* at 373.

    B.    <u>*The Policy*</u>

As stated above, there have been no allegations and no proof that there is any connection between Former Chief Garcia and the policy alleged to have caused a constitutional deprivation. In this case, the IAD has a practice of maintaining its records and internal administrative investigations confidential, and IAD does not share its internal affairs material with any other division within the BPD. IAD conducts <u>internal</u> investigations of <u>officers and employees</u> to determine if there was officer or employee misconduct, in response to citizen complaints or use of force incidents. IAD investigations of officers must generally be private matters due to their sensitive nature.[3] Indeed, to ensure the integrity of IAD, most (if not all) police departments remove their IAD from the chain of command, similar to BPD, and require IAD to report directly to the Chief of Police.[4]

---

[3] There are also state and federal laws requirements that generally prohibit disclosure of internal affairs investigations against an officer, particularly where no officer misconduct is found. *See e.g.*, TEX.LAB.CODE § 143.089(c) ("A letter, memorandum, or document relating to disciplinary action taken against the . . . police officer or to alleged misconduct by the . . . police officer that is placed in the person's personnel file as provided by Subsection (a)(2) shall be removed from the employee's file if the commission finds that: (1) the disciplinary action was taken without just cause; or (2) the charge of misconduct was not supported by sufficient evidence."). *Id.* at § 143.089(g) ("A . . . police department may maintain a personnel file on a . . . police officer employed by the department for the department's use, but the department may not release any information contained in the department file to any agency or person requesting information relating to a . . . police officer."); *Garrity v. State of N.J.*, 385 U.S. 493 (US. 1967) ("We now hold the protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office, and that it extends to all, whether they are policemen or other members of our body politic.").

[4] *See e.g.*, U.S. DEPARTMENT OF JUSTICE OFFICE OF COMMUNITY ORIENTED POLICING SERVICES, *Building Trust Between the Police and the Citizens They Serve: An Internal Affairs Promising Practices Guide for Local Law Enforcement* (July 2009) ("[T]he chief of police (or his or her designee) should directly oversee Internal Affairs matters, further ensuring confidentiality of records and the integrity of the process"); IACP NATIONAL LAW ENFORCEMENT POLICY CENTER, *Investigation of Employee Misconduct* (Jan. 2007) ("The integrity of internal investigations into allegations of officer misconduct is protected to a large degree when the internal investigations

On the other hand, the CID's purpose is to investigate alleged property crimes and crimes against persons, and to gather evidence of same to submit to the District Attorney's office for their investigation in prosecuting potential crimes. The only circumstance when IAD's and CID's missions may overlap is a case in which a police officer is being investigated for a potential crime, as may occur in an officer-involved shooting. Similarly, IAD's handling of potential exculpatory evidence is generally only implicated in the context of an officer who is challenging a misconduct finding. The evidence shows that in cases such as this, in which an officer and a criminal suspect are involved in an altercation, parallel investigations are (and should be) triggered in which IAD and CID are to evaluate the <u>same</u> evidence, but with different objectives. IAD's focus is on the conduct of the officer involved, while CID's focus is on whether the suspect committed a crime.

Despite what the Plaintiff alleges, however, the practice of IAD does not amount to a departmental policy of the BPD of nondisclosure of exculpatory evidence. On the contrary, the City and BPD have a policy of full disclosure of all evidence collected during a criminal investigation. *See* Exhibit "1" and attached documents. As shown in Exhibit "1," BPD has procedural guidelines that ensure all evidence, including any evidence that may be exculpatory, be provided to the District Attorney's Office in all criminal investigation case submissions.

As a result, the allegation of IAD having a policy of non-disclosure to the prosecution cannot have any merit as IAD should not interact with CID in the preparation of criminal investigations and submitting such to the District Attorney's Office. IAD's actions in this

---

authority is required to report directly to the chief executive officer. Such investigations may unearth sensitive and confidential information that may or may not prove to be true. If treated without rigid internal controls, such information could potentially ruin the reputation and career of employees under investigation. Therefore, access to investigative information must be closely guarded and limited to those personnel with a need and right to know. This will protect the subject from the unfounded rumors or false accusations that may arise where numerous employees have access to all or some of the investigative information.").

case were consistent with how IAD must operate at any police department. The very different purposes of IAD and CID are central to this case.

Furthermore, there is no evidence to establish that the Chief of Police, promulgated IAD's practice of confidentiality or acted with the required deliberate indifference knowing that a *Brady* violation would be "the highly predictable result" of IAD's practice, or that IAD's practice of confidentiality would result in a failure by CID to obtain all available evidence to give to the prosecution. *See Burge*, 336 F.3d at 371; *see also* Exhibit "1" and Exhibit "2," wherein Chief Garcia describes this practice of IAD was in place before he became Chief of Police.

Thus, following the required analysis as set forth by the Fifth Circuit to determine whether there is a municipal policy of nondisclosure of exculpatory evidence, there can be no finding of such a policy in this case. Accordingly, the Plaintiff's claim against the City of Brownsville should be dismissed as a matter of law.

### D.   There is No Constitutional Violation

An essential element of a municipal liability claim under 42 U.S.C. § 1983 is to establish there was a violation of the plaintiff's constitutional rights. In this case, that constitutional right is allegedly this Plaintiff's constitutional due process right to a fair trial under *Brady v. Maryland*. To prevail on a *Brady* claim, a defendant must "demonstrate that: (1) the **prosecution** suppressed or withheld evidence; (2) the evidence was favorable to him; and (3) the evidence was 'material either to guilt or punishment.'" *Burge*, 336 F.3d at 371 (quoting *Vega v. Johnson*, 149 F.3d 354, 363 (5th Cir. 1998)) (emphasis added).

Plaintiff claims IAD's failure to provide a copy of the video to the prosecution or Alvarez' defense counsel constituted a *Brady* violation. However, as a matter of law, there was no *Brady* violation in this case. Police officers have no duty under *Brady v. Maryland*

to disclose exculpatory evidence to defense counsel. *Mowbray v. Cameron County, Tex.*, 274 F.3d 269, 279 n. 6 (5th Cir. 2001). *Brady* requires the "individual prosecutor [ ] to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). A prosecutor's *Brady* duty extends to evidence that may only be known to the police investigators that have gathered evidence and interviewed witnesses in the investigation against the defendant. *Pitonyak v. Stephens*, 732 F.3d 525, 533 (5th Cir. 2013) (citing *Kyles*, 514 U.S. at 428-30, 437-38 (1995). The *Brady* duty falls on the prosecutor to learn of incriminating information in the hands of covered third parties, such as police investigators, and the *Brady* duty does not fall on those third parties, such as police investigators, to communicate it. *Id*. The *Brady* duty to disclose exculpatory evidence to defense counsel is incumbent upon the **prosecutor**, not the police officers who investigated the case. *Id.* (emphasis added). Thus, there is no constitutional violation or *Brady* violation for IAD's failure to disclose the video to CID or to the prosecution or defense counsel as the *Brady* duty is upon the prosecutor, not the investigating police officers.

In this case, the criminal investigation of Alvarez's assault on a public servant charge that was submitted to the District Attorney included the arresting officer's police report, the victim's (Jailer Arias') statement, and statements of two (2) other jailers who witnessed the incident involving Alvarez. At the time Mr. Alvarez's assault on a public servant charge was submitted to the District Attorney, there was sufficient probable cause for the District Attorney to prosecute the case against Mr. Alvarez. *See* Exhibit "3." In fact, even after viewing a copy of the original video recording of the Alvarez incident, the former prosecutor who reviewed the case initially and prepared the complaint against Mr. Alvarez stated that she still would have gone forward with prosecuting Mr. Alvarez regardless of the video. *See*

Exhibit "3." Thus, the evidence at issue should not be considered to be exculpatory on its face.

Given that the duty to provide Alvarez's defense counsel with the video, exculpatory or not, lies with the prosecutor, there can be no *Brady* violation and no constitutional violation under the facts of this case.

In summary, the Plaintiff has the burden of showing that there is a policymaker who promulgated a policy with deliberate indifference which was the moving force behind a violation of the Plaintiff's constitutional rights. Stated differently, since Chief Carlos Garcia was found to be a final policymaker here, Plaintiff must have evidence that Chief Garcia promulgated a policy, knowing that said policy would violate some individual's constitutional rights, and that policy caused the prosecutors in this case to withhold evidence that would have proved Plaintiff did not assault a jailer. In conclusion, (1) there is no evidence Chief Garcia promulgated any policy or practice followed by IAD that kept their administrative investigations confidential; and (2) there is no evidence that any policy of BPD kept the prosecutors from finding and asking for any and all evidence pertaining to their case against the Plaintiff. Since a *Brady* violation occurs when a prosecutor suppresses or withholds impeaching or exculpatory evidence from defense counsel, and given the Plaintiff's failure to make any allegations and produce any evidence regarding the actions of the prosecutors in this case, there can be no constitutional violation under *Brady v. Maryland*. Accordingly, Defendant is entitled to summary judgment.

**V.**
**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Defendant City of Brownsville respectfully requests that this Court grant its Motion for Summary Judgment in its entirety, that Plaintiff's municipal liability claim against this Defendant be dismissed with prejudice,

that Plaintiff takes nothing by this lawsuit, that Defendant recovers all costs incurred herein, and that Defendant recovers such other and further relief, at law and in equity, to which it may show itself to be justly entitled.

Signed on January 13, 2014.

        Respectfully submitted,

        GUERRA, LEEDS,
        SABO & HERNANDEZ, P.L.L.C.
        1534 E. 6th Street, Suite 200
        Brownsville, Texas 78520
        Telephone: (956) 541-1846
        Facsimile: (956) 541-1893

        By: /s/ Eileen Leeds by permission
        By: /s/Heather Scott
            Heather Scott
            State Bar No. 24046809
            USDC Adm. No. 575294
            Eileen Leeds
            Attorney-in-charge
            State Bar No. 00791093
            USDC Adm. No. 16799
        **ATTORNEYS FOR DEFENDANT**

## **CERTIFICATE OF SERVICE**

      I hereby certify that on January 13, 2014, a true and correct copy of the above and foregoing instrument has been forwarded to opposing counsel of record as noted hereunder.

*Via Electronic Delivery*
Mr. Eddie Lucio
Law Office of Eddie Lucio
432 E. Harrison
Harlingen, Texas 78550

*Via Electronic Delivery*
Mr. Luis M. Avila
The Avila Law Firm
675 Anton Blvd., First Floor
Costa Mesa, CA 92626

                                      By: /s/ Heather Scott
                                            Heather Scott